**Robert BARTH, Appellant**
**(Plaintiff below)**

v.

**Michael BARTH, Jr., Appellee**
**(Defendant below).**

No. 49S02–9510–CV–1216.

Supreme Court of Indiana.

Dec. 29, 1995.

Charles E. Johnson, Indianapolis, for appellant.

David C. Campbell, Nana Quay–Smith, Bingham Summers Welsh & Spilman, Indianapolis, for appellee.

SULLIVAN, Justice.

Should a shareholder in a closely-held corporation who alleges misuse of corporate assets be permitted to sue the corporation in a direct action, rather than proceed with a derivative action? We conclude that direct actions are permissible in certain circumstances and adopt as our rule in this regard § 7.01(d) of the American Law Institute's *Principles of Corporate Governance.*

### Background

This lawsuit was brought against defendants Barth Electric Co., Inc., and its president and majority shareholder Michael G. Barth, Jr., by plaintiff minority shareholder Robert Barth individually (rather than derivatively on behalf of the corporation).[1] Plaintiff Robert Barth alleged that defendant Michael Barth had taken certain actions which had the effect of "substantially reducing the value of Plaintiff's shares of common stock" in the corporation. Specifically, plaintiff contended that defendant Michael Barth had: (1) paid excessive salaries to himself and to members of his immediate family; (2) used corporate employees to perform services on his and his son's homes without compensating the corporation; (3) dramatically lowered

dividend payments; and (4) appropriated corporate funds for personal investments.[2] *Barth v. Barth* (1995), Ind.App., 651 N.E.2d 291. Michael Barth and the corporation moved to dismiss Robert Barth's complaint for the failure to state a claim upon which relief can be granted, Ind.Trial Rule 12(B)(6), arguing that a derivative action was required to redress claims of this nature.[3] The trial court granted the motion to dismiss. The Court of Appeals acknowledged that the "well-established general rule" prohibits a shareholder from maintaining an action in the shareholder's own name but found that requiring a derivative action here would "exalt form over substance" since Robert Barth could have satisfied the requirements for bringing a derivative action and that none of the reasons underlying the general derivative action requirement were present. *Barth v. Barth,* 651 N.E.2d at 293. The Court of Appeals reversed the trial court; the corporation and Michael Barth seek transfer.

### Discussion

■ As the Court of Appeals made clear, the well-established general rule is that shareholders of a corporation may not maintain actions at law in their own names to redress an injury to the corporation even if the value of their stock is impaired as a result of the injury. *Moll v. South Central Solar Systems, Inc.* (1981), Ind.App., 419 N.E.2d 154, 161 (citing *Schaffer v. Universal Rundle Corp.,* 397 F.2d 893 (5th Cir.1968), disapproved on other grounds, (1993), Ind., 623 N.E.2d 416; *Erlich v. Glasner,* 418 F.2d 226 (9th Cir.1969); *W. Clay Jackson Enterprises, Inc. v. Greyhound Leasing & Finan-*

---

1. Michael Barth owns 51% of the shares of the corporation. Robert Barth owns 29.8%. A third individual owns the remaining shares.

2. Plaintiff Robert Barth's complaint also alleges that (a) defendant Michael Barth wrongfully terminated plaintiff's employment with the corporation; (b) refused plaintiff access to corporate records; and (c) barred plaintiff from the corporation's premises. Claim (a) is not on appeal. With respect to the principal issue in this case—whether the plaintiff can bring his claims in a direct action against the corporation and defendant Michael Barth or must bring them derivatively in the name of the corporation—all of

plaintiff, defendant, trial court, and Court of Appeals appear to consider claims (b) and (c) to be subject to the same analysis and disposition as claims (1) through (4) set forth in the text, even though they do not allege the misuse of corporate assets. Some courts have subjected claims to inspect corporate books and records to a different analysis than claims of misuse of corporate assets. But because the parties and courts below have analyzed all of these claims in the same way, we will do so as well.

3. Derivative actions must comply with Ind.Trial Rule 23.1 and Ind.Code § 23–1–32–1 *et seq.*

cial Corp., 463 F.Supp. 666 (D.C.Puerto Rico 1979); Gregory v. Mitchell, 459 F.Supp. 1162 (N.D.Ala.1978); W. Fletcher, Cyclopedia of the Law of Private Corporations § 5908 (rev. perm. ed. 1980)). In Moll, Judge Ratliff discussed the purpose of the rule in the following terms:

> The rationale supporting this rule is based on sound public policy considerations. It is recognized that authorization of shareholder actions in such cases would constitute authorization of multitudinous litigation and disregard for the corporate entity. Schaffer v. Universal Rundle Corp., supra; Sutter v. General Petroleum Corp., (1946) 28 Cal.2d 525, 170 P.2d 898. Sound policy considerations have been said to require that a single action be brought rather than to permit separate suits by each shareholder even when the corporation and the shareholder are the same. W. Clay Jackson Enterprises, Inc. v. Greyhound Leasing & Financial Corp., supra.

Moll, 419 N.E.2d at 161.[4] In W & W Equipment Co., Inc. v. Mink (1991), Ind.App., 568 N.E.2d 564, Judge Baker set forth additional reasons for this rule: the protection of corporate creditors by putting the proceeds of the recovery back in the corporation; the protection of the interests of all the shareholders rather than allowing one shareholder to prejudice the interests of other shareholders;

and the adequate compensation of the injured shareholder by increasing the value of the shares when recovery is put back into the corporation. Id., 568 N.E.2d at 571 (citing Caswell v. Jordan (1987), 184 Ga.App. 755, 362 S.E.2d 769, cert. denied).

While we affirm the general rule requiring a shareholder to bring a derivative rather than direct action when seeking redress for injury to the corporation, we nevertheless observe two reasons why this rule will not always apply in the case of closely-held corporations.[5] First, shareholders in a close corporation stand in a fiduciary relationship to each other, and as such, must deal fairly, honestly, and openly with the corporation and with their fellow shareholders. W & W Equipment Co., 568 N.E.2d at 570; Krukemeier v. Krukemeier Machine and Tool Co., Inc. (1990), Ind.App., 551 N.E.2d 885; Garbe v. Excel Mold, Inc. (1979), Ind.App., 397 N.E.2d 296.[6] Second, shareholder litigation in the closely-held corporation context will often not implicate the policies that mandate requiring derivative litigation when more widely-held corporations are involved. W & W Equipment Co., Inc. v. Mink is a leading case in this regard. There our Court of Appeals was faced with a lawsuit filed by one of two 50% shareholders of a corporation after the other shareholder joined with non-shareholder directors to fire the plaintiff

---

**4.** A recognized exception to the general rule, as stated by our Supreme Court, is that "[a] personal cause of action arises when there is a breach of duty owed specially to the shareholder separate and distinct from the duty owed to the corporation." Sacks v. AFNB, (1972) 258 Ind. 189, 279 N.E.2d 807, 811. No such claim is made here.

**5.** A closely-held corporation is one which typically has relatively few shareholders and whose shares are not generally traded in the securities market. W & W Equipment Co., Inc. v. Mink (1991), Ind.App., 568 N.E.2d 564, 570 (citing F. Hodge O'Neal & Robert B. Thompson, O'Neal's Close Corporations § 1.02 (3d ed.)). Accord, American Law Institute, Principles of Corporate Governance: Analysis and Recommendations § 1.06 (1994).

**6.** This principle of Indiana corporate law mirrors that reached by the Supreme Judicial Court of Massachusetts in a leading discussion of the relative duties of shareholders in closely-held corporations:

> Because of the fundamental resemblance of the close corporation to the partnership, the trust and confidence which are essential to this scale and manner of enterprise, and the inherent danger to minority interests in the close corporation, we hold that stockholders in the close corporation owe one another substantially the same fiduciary duty in the operation of the enterprise that partners owe to one another. In our previous decisions, we have defined the standard of duty owed by partners to one another as the "utmost good faith and loyalty." Stockholders in close corporations must discharge their management and stockholder responsibilities in conformity with this strict good faith standard. They may not act out of avarice, expediency or self-interest in derogation of their duty of loyalty to the other stockholders and to the corporation.

Donahue v. Rodd Electrotype Co. of New England, Inc., 367 Mass. 578, 328 N.E.2d 505, 515 (1975) (footnotes and citations omitted).

shareholder and arrange for the payment of certain corporate assets to the other shareholder. The court concluded that no useful purpose would be served by forcing the plaintiff to proceed derivatively where the policies favoring derivative actions were not implicated—direct corporate recovery was not necessary to protect absent shareholders or creditors as none existed. *Id.,* 568 N.E.2d at 571.

Because shareholders of closely-held corporations have very direct obligations to one another and because shareholder litigation in the closely-held corporation context will often not implicate the principles which gave rise to the rule requiring derivative litigation, courts in many cases are permitting direct suits by shareholders of closely-held corporations where the complaint is one that in a public corporation would have to be brought as a derivative action. *See* F. Hodge O'Neal & Robert B. Thompson, *O'Neal's Close Corporations* § 8.16 n. 32 (3d ed. & 1995 Cum. Supp.) (collecting cases); American Law Institute, *Principles of Corporate Governance: Analysis and Recommendations* § 7.01, reporter's n. 4 (1994) (collecting cases). However, it is important to keep in mind that the principles which gave rise to the rule requiring derivative actions will sometimes be present even in litigation involving closely-held corporations. For example, because a corporate recovery in a derivative action will benefit creditors while a direct recovery by a shareholder will not, the protection of creditors principle could well be implicated in a shareholder suit against a closely-held corporation with debt. This was the case in *Maki v. Estate of Ziehm,* 55 A.D.2d 454, 391 N.Y.S.2d 705 (1977), where a New York court rejected an attempt by one of two 50% shareholders to claim through a direct action certain corporate assets from the estate of the other shareholder:

> The assets belonged to the corporation, not to the petitioner, and only by virtue of his status as a stockholder may he claim some right to the corporate assets upon their final distribution. Moreover, a derivative action is the appropriate vehicle for the protection of the rights of the corporation's creditors, since corporate liabilities must be extinguished before any corporate assets can be distributed to the stockholders. Petitioner may not be permitted to circumvent the rights of creditors by maintaining a direct action, the potential benefits of which would inure solely to himself.

*Maki,* 55 A.D.2d at 455–56, 391 N.Y.S.2d at 707 (1977) (citation omitted).

In its recently-completed corporate governance project, the American Law Institute proposed the following rule for determining when a shareholder of a closely-held corporation may proceed by direct or derivative action:

> In the case of a closely held corporation, the court in its discretion may treat an action raising derivative claims as a direct action, exempt it from those restrictions and defenses applicable only to derivative actions, and order an individual recovery, if it finds that to do so will not (i) unfairly expose the corporation or the defendants to a multiplicity of actions, (ii) materially prejudice the interests of creditors of the corporation, or (iii) interfere with a fair distribution of the recovery among all interested persons.

A.L.I., *Principles of Corporate Governance* § 7.01(d). We have studied this rule and find that it is consistent with the approach taken by our Court of Appeals and by most other jurisdictions in similar cases and that it represents a fair and workable approach for balancing the relative interests in closely-held corporation shareholder litigation.

In determining that a trial court has discretion to decide whether a plaintiff must proceed by direct or by derivative action, we make the following observations, drawn largely from the Comment to § 7.01(d). First, permitting such litigation to proceed as a direct action will exempt the plaintiff from the requirements of Ind.Code § 23–1–32–1 *et seq.,* including the provisions that permit a special committee of the board of directors to recommend dismissal of the lawsuit. Ind. Code § 23–1–32–4. As such, the court in making its decision should consider whether the corporation has a disinterested board that should be permitted to consider the lawsuit's impact on the corporation. A.L.I., *Corporate Governance Project* § 7.01 com-

ment e. Second, in some situations it may actually be to the benefit of the corporation to permit the plaintiff to proceed by direct action. This will permit the defendant to file a counterclaim against the plaintiff, whereas counterclaims are generally prohibited in derivative actions. Also, in a direct action each side will normally be responsible for its own legal expenses; the plaintiff, even if successful, cannot ordinarily look to the corporation for attorney's fees. *Id.*

### Conclusion

We grant transfer, vacate the opinion of the Court of Appeals, and remand this cause to the trial court for reconsideration of its order of dismissal in light of the rule adopted in this opinion.

SHEPARD, C.J., and DeBRULER, DICKSON and SELBY, JJ., concur.