**In re Tiffany Ann ARCELLA-COFFMAN, Debtor.**

**Automated Reporting Management Systems, Inc. and Robert Abraham, Plaintiffs,**

v.

**Tiffany Ann Arcella-Coffman, Defendant.**

Bankruptcy No. 03-64670.
Adversary No. 03-6317.

United States Bankruptcy Court, N.D. Indiana, Hammond Division.

Sept. 29, 2006.

Stephen M. Maish, Maish & Mysliwy Attorneys at Law, Hammond, IN, for Debtor.

### ORDER CONCERNING REAL PARTIES–IN–INTEREST

J. PHILIP KLINGEBERGER, Bankruptcy Judge.

In this adversary proceeding, the plaintiffs Automated Reporting Management Systems, Inc. ("ARMS") and Robert Abraham ("Abraham") assert that claims which they allege against the defendant Tiffany Ann Arcella–Coffman ("Arcella–Coffman") are excepted from discharge under 11 U.S.C. § 523(a)(2), 11 U.S.C. § 523(a)(4) and 11 U.S.C. § 523(a)(6). Arcella–Coffman contends that certain, if not in fact all, of the claims asserted against her by ARMS and Abraham cannot be pursued by the plaintiffs in the capacities in which they have sued.

The complaint opens with 13 numbered paragraphs which state the nature of various defalcations alleged by the plaintiffs to have been committed by Arcella–Coffman as a shareholder, director, officer and employee of ARMS. Three specifically designated counts follow this general recitation. In Count I, ARMS asserts that Arcella–Coffman is liable to it for damages which are excepted from discharge due to her conduct—including breaches of fiduciary duty—in the operation of ARMS. Count II, asserted solely by ARMS, seeks treble damages pursuant to I.C. 34–24–3–1 from Arcella–Coffman with respect to the conduct alleged in Count I. Count III, in which Abraham is the sole plaintiff, asserts that Arcella–Coffman is liable to him for breaches of fiduciary duty which are excepted from discharge, including damages assessable under I.C. 34–24–3–1.

Arcella–Coffman's answer raised affirmative defenses addressed to the standing of ARMS and Abraham to assert claims against her in relation to the corporate plaintiff. The parties filed a pre-trial order on May 26, 2006, in which these affirmative defenses were advanced by Arcel-

la–Coffman in sub-paragraphs H1, H2 and H3 of that document. By its order entered on June 15, 2006, the Court scheduled an evidentiary hearing on July 11, 2006 at which each party was directed to present the evidence deemed necessary to present the issues raised by the affirmative defenses to the Court for determination of those issues as questions of law. Following the evidentiary hearing on July 11, 2006, the Court entered an order on July 17, 2006 which stated a briefing schedule by which the parties were to present their legal contentions concerning these issues to the Court. All legal memoranda were timely filed, and the issues concerning standing of the plaintiffs are now before the Court for determination.

### I. *Record Before the Court*

The record before the Court for the purposes of determining the issues presented by the parties is comprised of the following:

1. The plaintiffs' complaint filed on December 24, 2003;

2. The defendant's answer filed on January 26, 2004;

3. The pre-trial order filed on May 26, 2006;

4. The record of the evidentiary hearing conducted on July 11, 2006;

5. The Memorandum of Law of Defendant/Debtor Tiffany Arcella–Coffman Re Standing Issues filed on August 15, 2006;

6. The Adversary Plaintiffs' Brief in Opposition to Debtor–Defendant's Affirmative Defenses Asserting Lack of Standing, filed on August 15, 2006;

7. The Reply Memorandum of Law of Defendant/Debtor Tiffany Arcella–Coffman Re Standing Issues filed on August 30, 2006; and

8. The Adversary Plaintiffs' Reply Brief on Standing Issues filed on August 30, 2006.

### II. *Issues Presented*

As designated in their respective initial memoranda, the issues before the Court are the following:

A. Whether or not Abraham has standing to assert nondischargeability claims on behalf of ARMS.

B. Whether or not Abraham has standing, in his personal capacity, to assert nondischargeability claims.

C. Whether or not ARMS, as a dissolved corporation, has standing to assert any nondischargeability claims. Included within this latter issue is the sub-issue of whether Arcella–Coffman has waived the assertion of this issue.

Rather than separately state a recitation of pertinent facts, the Court will incorporate the facts deemed necessary by it for its determinations into each specific subsection of the subsequent Analysis portion of this decision.

### III. *Analysis*

Because the scope of the trial depends in large part upon the extent to which the plaintiffs are the proper parties-in-interest[1] to assert the claims which they seek

---

1. The parties and the Court have consistently addressed the affirmative defenses issues as questions of "standing". This is a technically incorrect designation. The issues are more properly phrased as whether the plaintiffs are the proper parties-in-interest under Fed. R.Bankr.P. 7017/Fed.R.Civ.P. 17(a); *Labovitz*

*v. The Washington Times Corp.*, 172 F.3d 897, 900 (fn 6) (App.D.C.1999). Rule 17(a) in pertinent part states:

> **(a) Real Party in Interest.** Every action shall be prosecuted in the name of the real party in interest.... No action shall be dismissed on the ground that it is not prose-

to advance against Arcella–Coffman, the Court and the parties determined that a limited evidentiary hearing would provide the factual basis for the Court's determination of the issues raised by Arcella–Coffman's affirmative defenses.

First a note on the methodology employed by the parties and the Court. If all three of the affirmative defenses raised by Arcella–Coffman are sustained, then there would in essence be nothing left for Abraham and ARMS to pursue against Arcella–Coffman. Arcella–Coffman asserts that ARMS cannot pursue claims, either because its action in bringing suit against Arcella–Coffman was not approved by its Board of directors, or because ARMS was not properly dissolved by Abraham. Thus, Arcella–Coffman argues that ARMS itself cannot be a proper party plaintiff with respect to any claims asserted against her. She then argues that Abraham cannot individually assert any claims which he has raised in the adversary proceeding against her, because all of those claims relate solely to harms alleged to have been suffered by ARMS. She then contends that Abraham may undertake claims on behalf of ARMS only through a derivative action under Fed.R.Civ.P. 23.1, and that he has

failed to satisfy the procedural requirements for that action. Thus, it can readily be seen that the issues addressed by this decision are critical to its determination. The Court's research, including review of the cases cited by the parties, establishes that these issues are customarily addressed after trial on the merits, upon a full evidentiary record. In that manner, obviously all of the factual bases upon which liability may be premised are before the Court, and the Court can then more readily determine precisely the nature of those claims in the context of whether they must be brought solely on behalf of the corporate entity, or whether certain of them may be asserted by an individual on his own/her own behalf. The downside to this approach is that an extensive and expensive trial may result in the determination that the plaintiff/plaintiffs are not the proper parties-in-interest to pursue the case, resulting in a judgment against them on that ground. This seems inherently unfair, especially in the circumstances of a case such as this where the parties are able to delineate and address the plaintiffs' claims in a manner, including the development of a limited evidentiary record, which provides the Court with a substantive basis for determining issues concerning the

cuted in the name of the real party in interest until a reasonable time has been allowed after objection for ratification of commencement of the action by, or joinder or substitution of, the real party in interest; and such ratification, joinder, or substitution shall have the same effect as if the action had been commenced in the name of the real party in interest.

The provision of the foregoing rule which allows an opportunity for ratification by the real party-in-interest has no efficacy in this adversary proceeding. A portion of Arcella–Coffman's argument concerning the actions asserted by ARMS is that those actions were not properly approved by corporate officials, particularly, by the corporation's Board of directors. There are only two directors of ARMS—Abraham and Arcella–Coffman—and

it would be a nugatory act indeed, particularly based upon the record now before the Court, to expect that Arcella–Coffman would vote in favor of ARMS' asserting claims against her. If, as Arcella–Coffman contends, the claims asserted by Abraham cannot be asserted by him in his individual capacity, but rather must be pursued as a derivative action under Fed.R.Bankr.P. 7023.1/ Fed.R.Civ.P. 23.1, the Court could provide Abraham with the opportunity to address his individual claims in the manner of a derivative action, an undertaking which in the Court's view, based upon the record before it, could be easily effected under the requirements of Rule 23.1. However, as will be seen, the Court's disposition of the affirmative defenses renders pursuit of a derivative action unnecessary.

real parties-in-interest. Pursuant to the consent of Abraham, ARMS and Arcella–Coffman, the Court therefore deems it appropriate to address the issues raised by Arcella–Coffman's affirmative defenses in the manner previously established.

With the foregoing stated, the Court now addresses the issues raised by Arcella–Coffman.

### A. Whether or Not ARMS as a Corporate Entity May Present Claims Against Arcella–Coffman in This Case

■ ARMS is a designated plaintiff in this action. Arcella–Coffman asserts that ARMS as a corporate entity cannot bring the claims against her because its action in doing so was not approved by the corporation's board of directors.[2] Arcella–Coffman also asserts that ARMS, as a dissolved corporation, cannot pursue corporate claims against her, essentially on the premise that ARMS was not dissolved as a corporate entity in accordance with the requirements of applicable law.[3] Thus, Arcella–Coffman posits in essence a Catch–22 argument. On the one hand, because ARMS' actions against her were not approved by a majority of a validly constituted quorum of the board of directors, the corporation cannot pursue her. Alternatively, even though a properly effected dissolution of the corporation would have provided ARMS with the necessary authority to commence the litigation against Arcella–Coffman as an adjunct to winding up its affairs,[4] the defendant contends that because dissolution was not approved in the manner required by Indiana corporate law, ARMS could not properly be dissolved to pursue its claims against her.

Let's start with the last contention first. Neither party has favored the Court with the legal requirements for dissolution of ARMS as provided by Indiana law. The By-laws of the corporation were submitted into evidence, and they are silent as to the requirements for dissolution of the corporation. Article XI of the By-laws provides that "(t)he provisions of the Indiana Business Corporation Law ... applicable to any of the matters not herein specifically covered by these By-laws are hereby incorporated by reference in and made a party of these By-laws". The primary provision of Indiana law governing dissolution of a corporation is I.C. 23–1–45–2. That statute provides in pertinent part as follows:

Sec. 2. (a) A corporation's board of directors may propose dissolution for submission to the shareholders.

(b) For a proposal to dissolve to be adopted:

(1) the board of directors must recommend dissolution to the shareholders unless the board of directors determines that because of conflict of interest or other special circumstances it should make no recommendation and communicates the basis for its determination to the shareholders, and

(2) the shareholders entitled to vote must approve the proposal to dissolve as provided in subsection (e)

---

2. This argument is advanced in Section I(A) of Arcella–Coffman's initial memorandum of law. Although not designated as a separate issue by the parties, this issue is within the penumbras of both issues A and C, as designated above.

3. This argument is advanced in Section III of Arcella–Coffman's initial memorandum of law.

4. This point is conceded by Arcella–Coffman on page 13 of her initial memorandum.

. . .

(d) The corporation shall notify each shareholder, whether or not entitled to vote, of the proposed shareholders' meeting in accordance with IC 23–1–29–5. The notice must also state that the purpose, or one (1) of the purposes, of the meeting is to consider dissolving the corporation.

(e) Unless the articles of incorporation or the board of directors (acting under subsection (c)) require a greater vote or a vote by voting groups, the proposal to dissolve to be adopted must be approved by a majority of all the votes entitled to be cast on that proposal.

Thus, the proposal to dissolve must be proposed by the board of directors, and the dissolution itself must be approved by a majority of all shareholder votes entitled to be cast on the dissolution proposal.

■ There is a conflict in the evidence as to the shareholder interests of Abraham and Arcella–Coffman at the time the purported dissolution of the corporation was undertaken. Abraham testified at the July 11, 2006 hearing that a meeting was conducted in May of 2002 at which dissolution was addressed. Arcella–Coffman was provided with notice of this meeting, according to Abraham (a point not truly contested by Arcella–Coffman), but she did not attend the meeting. Abraham testified that he approved the dissolution as President. However, there is nothing in the corporation's By-laws or in the record before the Court which establishes, or even suggests, that dissolution can be proposed by an officer of ARMS. Thus, I.C. 23–1–45–2(b) controls, and the board of directors must have initiated the dissolution action. Article III, Section 12 of ARMS' By-laws provides that a majority of the number of directors provided by the governing corporate documents constitutes a quorum, and that the "act of the majority of the di-rectors present at any meeting of the Board of Directors at which a quorum is present shall constitute the act of the Board of Directors". ARMS had two directors, and as is common in such circumstances, if one director fails to attend a meeting, there is no quorum and therefore no valid action can be taken on behalf of the corporation. Thus, the dissolution of ARMS was never undertaken in accordance with the requirements imposed by Indiana law, and it was therefore ineffective. Additionally, even if properly recommended to shareholders, the dissolution action must have been approved by a majority of all shareholders entitled to vote on that action; I.C. 23–1–45–2(e). While there was a conflict in testimony, the Court finds that the evidence establishes that there were initially 1,000 authorized shares for ARMS, and that Abraham and Arcella–Coffman each owned 500 shares. Article II, Section 6(a) of ARMS' Bylaws provides that at a meeting of shareholders, each share is entitled to one vote. Abraham contends that he acquired Arcella–Coffman's shares of ARMS pursuant to a settlement agreement, entered into evidence at the July 11, 2006 hearing as Defendant's Standing Exhibit 2. ARMS relies on paragraph 17(d) of that document for his assertion. Arcella–Coffman, on the other hand, contended at the hearing that she did not transfer her shares to Abraham, and that the settlement agreement only transfers the physical assets of the corporation to him. Arcella–Coffman is correct: there is nothing in the settlement agreement which transfers ownership of the shares held by Arcella–Coffman in ARMS to Abraham. Thus, at the time of the May 2002 meeting, Arcella–Coffman owned 500 shares of ARMS and Abraham owned 500 shares of ARMS. Arcella–Coffman did not vote her shares in favor of dissolution, and thus because the requirements of I.C. 23–1–45–2(e) were not satis-

fied, Abraham's attempted dissolution of ARMS was ineffective.

■ The foregoing leaves ARMS intact for all purposes of this litigation. Arcella–Coffman contends that only the board of directors could have authorized ARMS to initiate this adversary proceeding against her, and that because the board did not undertake an action to do that, ARMS has no corporate authority to pursue its claims against her in this case. The primary authority upon which Arcella–Coffman rests her case is I.C. 23–1–33–1(b), which states:

All corporate powers shall be exercised by or under the authority of, and the business and affairs of the corporation managed under the direction of, its board of directors, subject to any limitation set forth in the articles of incorporation.

The foregoing does not specifically address the issue of whether or not the board of directors of a closely held Indiana corporation must authorize the corporation to file litigation, or whether the filing of litigation may be authorized by an officer of the corporation. The By-laws of ARMS do not address the filing of litigation, or by whom it must be authorized. Section 1 of Article III of the ARMS By-laws provides the duties of the directors of the corporation, stating in pertinent part the following:

*Section 1. Duties.* The business, property and affairs of the Corporation shall be managed and controlled by the Board of Directors and, subject to such restrictions, if any, as may be imposed by law, the Articles of Incorporation or these By-laws, the Board of Directors may, and are fully authorized to, do all such lawful acts and things as may be done by the Corporation which are not directed or required to be exercised or done by the shareholders.

The powers of officers of a corporation under general Indiana corporations statutes is stated in I.C. 23–1–36–2 as follows:

Each officer has the authority and shall perform the duties set forth in the bylaws or, to the extent consistent with the bylaws, the duties prescribed by the board of directors or by direction of an officer authorized by the board of directors to prescribe the duties of other officers.

Sections 5 and 6 of Article IV of ARMS' By-laws state:

*Section 5. Powers and Duties of Officers.* The officers so chosen shall perform the duties and exercise the powers expressly conferred or provided for in these By-laws, as well as the usual duties and powers incident to such office, respectively, and such other duties and powers as may be assigned to them by the Board of Directors or by the President.

*Section 6. The President.* the President shall be the Chief Executive Officer of the Corporation and shall have charge of and supervision and authority over all of the affairs, business and operations of the Corporation in the ordinary course of its business, with all such duties, powers and authority with respect to such affairs, business and operations as may be reasonably incident to such responsibilities. He shall have general supervision of and direct all officers, agents and employees of the Corporation; and shall see that all orders and resolutions of the Board are carried into effect. He shall have the authority to sign, with the Secretary or an Assistant Secretary, any and all certificates for shares of the capital stock of the Corporation, and shall have the authority to sign singly deeds, bonds, mortgages, contracts, or other instruments to which the Corpora-

tion is a party (except in cases where the signing and execution thereof shall be expressly delegated by the Board or by these By-laws, or by law to some other officer or agent of the Corporation); and shall preside at meetings of the shareholders and of the Board of Directors. He shall also serve the Corporation in such other capacities and perform such other duties and have such additional authority and powers as are incident to his office or as may be defined in these By-laws or delegated to him from time to time by the Board of Directors.

The question thus becomes whether Abraham, as President of the corporation (a fact indisputably established by the evidence), had the authority to initiate this adversary proceeding as a direct action by ARMS against Arcella–Coffman.

■ Try as he did, the author of this decision could find no statute or decision in Indiana which addresses the issue of whether the board of directors must authorize the commencement of litigation on behalf of an Indiana corporation. The Indiana statutes which generally provide for the powers and duties of directors of a corporation, and of officers of a corporation, do not specifically address this issue. In pragmatic terms, it would be extraordinarily burdensome and administratively inefficient if all litigation initiated by an Indiana corporation was required to be approved by the corporation's board of directors. While perhaps in the context of a closely held corporation it may make some sense to provide for that decision by the board of directors, then again in a closely held corporation such as ARMS, the officers and the board of directors are identical. In the context of a major corporation, such as an insurance company for example, initiation of litigation is an everyday occurrence, and while certainly the articles of incorporation and by-laws of a major corporation almost certainly control the manner in which authorization of litigation is effected, in the absence of such provisions it would seem to be immensely inefficient to require that every subrogation suit filed by a major insurance company incorporated in Indiana must be presented to, and approved by, the corporation's board of directors. In the absence of any law to the contrary, in the Court's view the President of an Indiana corporation is authorized, by virtue of the powers granted to him by statutory law—and in the case of ARMS by its By-laws [5]—to initiate litigation without approval of the board of directors. This is in accord with the majority view of courts that have addressed this issue that the President, as the primary executive officer of a corporation, has the authority—absent preclusion by the board of directors—to initiate litigation on behalf of the corporation; *see*, 2A William M. Fletcher, *Fletcher Cyclopedia of the Law of Private Corporations* § 618. *See, Ross v. Roston Elevator Co., et al.*, 1975 WL 182488 (Ohio App. 8 Dist.1975); *Gemstar Limited v. Ernst & Young*, 185 Ariz. 493, 917 P.2d 222, 230–231 (1996). This is particularly appropriate in the context of this case. The allegations of the complaint are that Arcella–Coffman, as an officer, director and principal of the corporation, diverted assets of the corporation to her own use and committed other acts to the detriment of the corporation and its creditors. ARMS had two directors, Abraham and Arcella–Coffman, each with one vote on matters submitted to the board of directors. ARMS had two shareholders, each with 500 votes on matters submitted to shareholders. Arcella–Coffman didn't

---

5. Specifically, in the context of this case, Article IV, Section 5 ("usual powers and duties incident to said office"), and the first sentence of Article IV, Section 6.

attend the meeting at which the initiation of litigation was addressed, and it is a reasonable assumption that even had she done so, she would not have voted in a manner which authorized ARMS to sue her. The Indiana Supreme Court has evidenced its willingness to depart from the requirements of a Rule 23.1 shareholder derivative action in closely held corporation matters involving actions against a corporate principal.[6] In view of this policy, it is appropriate to look to other states for decisions which address the powers of an officer to initiate litigation by the corporation under the circumstances of this case. The Court agrees with the determinations in *Conlee Construction Company v. Cay Construction Company*, Fla.App., 221 So.2d 792 (1969) and in *Kamas Securities Co. v. Taylor*, Utah, 119 Utah 241, 226 P.2d 111 (1950), which hold that in closely held corporation contexts, when circumstances preclude obtaining authorization from the board of directors, an officer of the corporation, particularly the President, may initiate suit by the corporation to preserve and assert the interests of the corporation against a principal. In such circumstances, as indicated by the pragmatic approach of *Barth v. Barth*,

Ind., 659 N.E.2d 559 (1995), requiring resort to a shareholder derivative action under Rule 23.1 is unnecessary to place the corporate action before the court.[7]

The Court thus concludes that Abraham, as President of the corporation, had the authority to authorize the filing of this adversary proceeding by ARMS, as a corporate entity, against Arcella–Coffman. Thus, to the extent of claims asserted in this adversary proceeding which inure to ARMS, ARMS is the proper party-in-interest and has been validly authorized to pursue this litigation against Arcella–Coffman as a party plaintiff.

■ The parties devoted a good portion of their memoranda to the issue of whether Abraham, as a shareholder of the corporation, could assert in essence corporate claims in his individual capacity as a plaintiff, and thereby avoid a derivative action under Rule 23.1. While this issue—designated as Issue A above—has been essentially mooted by the Court's determination that ARMS itself, as a proper party-in-interest, has been authorized to commence this adversary proceeding to assert its own claims,[8] the ability of Abraham to individu-

---

**6.** *See, e.g., Barth v. Barth,* Ind., 659 N.E.2d 559 (1995).

**7.** The circumstances of this case illustrate solid policy reasons for this determination, as well. As is a common circumstance in a closely held corporation in which two individuals join to pursue business in a corporate form, each of the joining individuals owns 50% of the stock in the corporation, there are only two directors of the corporation (the two individuals), and the articles of incorporation and by-laws are silent as to the manner in which deadlocks between shareholders and directors are broken. Issues relating to allegations of misconduct by a shareholder, officer or director which directly allegedly damaged the corporation—in the foregoing context—are much more appropriately addressed on the merits, rather than on issues that relate to the formalities of the mecha-

nism by which the corporation's assertion of its interests was sought to be implemented.

**8.** It must be borne in mind that the causes of action being asserted in this adversary proceeding are premised on federal law under 11 U.S.C. § 523(a)(2), (4) and (6). However, in order to assert that a debt owed to an entity is excepted from discharge under those sections, it is necessary to establish that there is in fact a debt. Thus, as is true in nondischargeability adversary proceedings in which the underlying claims of the plaintiffs have not been previously litigated or otherwise liquidated, the subject matter of this adversary proceeding relates not only to the applicability of the federal nondischargeability sections, but also to whether or not there is an underlying debt to which those sections may apply. Thus, it is pertinent to address the entity/ person by

ally assert corporate claims is implicated in the determination of the identity of the "real party in interest" plaintiff. In *Barth v. Barth*, Ind., 659 N.E.2d 559 (1995), the Indiana Supreme Court established an exception to classical derivative litigation by shareholders in the context of a closely held corporation, in which a closely held corporate shareholder may pursue corporate claims based upon his individual status as a shareholder of the corporation. The Court stated:

> Because shareholders of closely-held corporations have very direct obligations to one another and because shareholder litigation in the closely-held corporation context will often not implicate the principles which gave rise to the rule requiring derivative litigation, courts in many cases are permitting direct suits by shareholders of closely-held corporations where the complaint is one that in a public corporation would have to be brought as a derivative action. *See* F. Hodge O'Neal & Robert B. Thompson, *O'Neal's Close Corporations* § 8.16 n. 32 (3d ed. & 1995 Cum.Supp.) (collecting cases); American Law Institute, *Principles of Corporate Governance: Analysis and Recommendations* § 7.01, reporter's n. 4 (1994) (collecting cases). However, it is important to keep in mind that the principles which gave rise to the rule requiring derivative actions will sometimes be present even in litigation involving closely-held corporations. *For example, because a corporate recovery in a derivative action will benefit creditors while a direct recovery by a shareholder will not, the protection of creditors principle could well be implicated in a shareholder suit against a closely-held corporation with debt.* This was the case in *Maki v. Estate of Ziehm*, 55 A.D.2d 454, 391 N.Y.S.2d 705 (1977),

where a New York court rejected an attempt by one of two 50% shareholders to claim through a direct action certain corporate assets from the estate of the other shareholder:

> The assets belonged to the corporation, not to the petitioner, and only by virtue of his status as a stockholder may he claim some right to the corporate assets upon their final distribution. Moreover, a derivative action is the appropriate vehicle for the protection of the rights of the corporation's creditors, since corporate liabilities must be extinguished before any corporate assets can be distributed to the stockholders. Petitioner may not be permitted to circumvent the rights of creditors by maintaining a direct action, the potential benefits of which would inure solely to himself.

*Maki*, 55 A.D.2d at 455–56, 391 N.Y.S.2d at 707 (1977) (citation omitted).

In its recently-completed corporate governance project, the American Law Institute proposed the following rule for determining when a shareholder of a closely-held corporation may proceed by direct or derivative action:

> In the case of a closely held corporation, the court in its discretion may treat an action raising derivative claims as a direct action, exempt it from those restrictions and defenses applicable only to derivative actions, and order an individual recovery, if it finds that to do so will not (I) unfairly expose the corporation or the defendants to a multiplicity of actions, (ii) materially prejudice the interests of creditors of the corporation, or (iii) interfere with a fair distribution of the recovery among all interested persons. A.L.I., *Principles of Corporate Governance* § 7.01(d). We have studied this rule and find that it is consistent

whom the underlying claims sought to be

excepted from discharge could be advanced.

with the approach taken by our Court of Appeals and by most other jurisdictions in similar cases and that it represents a fair and workable approach for balancing the relative interests in closely-held corporation shareholder litigation.

In determining that a trial court has discretion to decide whether a plaintiff must proceed by direct or by derivative action, we make the following observations, drawn largely from the Comment to § 7.01(d). First, permitting such litigation to proceed as a direct action will exempt the plaintiff from the requirements of Ind.Code § 23–1–32–1 *et seq.*, including the provisions that permit a special committee of the board of directors to recommend dismissal of the lawsuit. Ind.Code § 23–1–32–4. As such, the court in making its decision should consider whether the corporation has a disinterested board that should be permitted to consider the lawsuit's impact on the corporation. A.L.I., *Corporate Governance Project* § 7.01 comment e. Second, in some situations it may actually be to the benefit of the corporation to permit the plaintiff to proceed by direct action. This will permit the defendant to file a counterclaim against the plaintiff, whereas counterclaims are generally prohibited in derivative actions. Also, in a direct action each side will normally be responsible for its own legal expenses; the plaintiff, even if successful, cannot ordinarily look to the corporation for attorney's fees. *Id.* (emphasis supplied)

*Barth, supra.,* at 562–563.

The Supreme Court in *Barth* remanded the case to the Court of Appeals of Indiana to determine whether or not an individually asserted action with respect to essentially corporate derivative claims could be sustained under the facts of the case. In the decision regarding the remanded case [*Barth v. Barth,* Ind.App. 693 N.E.2d 954 (1998)], the Court applied the criteria established by the Supreme Court with respect to actions of this nature, and determined that the nature of the actions asserted by the plaintiff, if allowed to be pursued individually apart from derivatively, would materially prejudice the interests of creditors of the corporation, and would interfere with a fair distribution of the recovery among all interested persons. The testimony of Abraham at the July 11th hearing established that ARMS has creditors whose debts are yet to be paid. While Abraham's counsel suggested that the Court could construct an order which required certain of Abraham's recovery to be diverted to the corporation for the benefit of its creditors, the Court finds no support in Indiana law for this suggested remedy.

■ The analysis of whether or not a shareholder may pursue corporate claims in his/her own right, as contrasted to proceeding with a derivative action, depends at its inception upon whether the rights sought to be asserted by the shareholder are individual to the shareholder, or whether they are claims of the corporation. This distinction was the subject of *G & N Aircraft, Inc. v. Boehm,* Ind., 743 N.E.2d 227, 234–235 (2001).

A direct action is "[a] lawsuit to enforce a shareholder's rights against a corporation." *Black's Law Dictionary* 472 (7th ed.1999). This action may be brought in the name of the shareholder "to redress an injury sustained by, or enforce a duty owed to, the holder." 2 *Principles of Corporate Governance* § 7.01, at 17 (A.L.I.1994). Direct actions are typically appropriate to enforce the right to vote, to compel dividends, to prevent oppression or fraud against minority shareholders, to inspect corporate books,

and to compel shareholder meetings. *Id.*

Derivative actions, on the other hand, are suits "asserted by a shareholder on the corporation's behalf against a third party ··· because of the corporation's failure to take some action against the third party." *Black's* at 455. They are brought "to redress an injury sustained by, or enforce a duty owed to, a corporation." A.L.I. at 17. Derivative actions are brought in the name of the corporation and are governed by Trial Rule 23.1 and Indiana Code section 23–1–32–1. To bring a derivative action a shareholder must satisfy four requirements. They are: (1) the complaint must be verified; (2) the plaintiff must have been a shareholder at the time of the transaction of which he complains; (3) the complaint must describe the efforts made by the plaintiff to obtain the requested action from the board of directors; and (4) the plaintiff must fairly and adequately represent the interests of the shareholders. *Examples of actions that are typically required to be brought derivatively include actions to recover for loss of a corporate opportunity, to recover corporate waste, and to recover damages to a corporation caused by an officer or director's self-dealing.*

Some courts and commentators, and indeed the defendants in this case, would distinguish between direct and derivative actions based on whether the shareholder or the corporation has been injured. John W. Welch, *Shareholder Individual and Derivative Actions: Underlying Rationales and the Closely Held Corporation,* 9 J. Corp. L. 147, 154–57 (1984). Under this view, if only the interests of the corporation are directly damaged, then the suit must be derivative. The difficulty in this approach is that, in many cases, it is entirely unclear whether there has been direct damage to the shareholders or the corporation or both.[FN1]

---

FN1. This is particularly true of close corporations. This case presents a good example. One act complained of is a coerced sale of Gilliland's and McCoy's shares through misuse of Goldsmith's corporate office. Assuming for the moment that this asserts a claim, in some sense, G & N is the injured party. To the extent a value (the premium attributable to majority shareholding) has been acquired by use of a corporate office, it can be viewed as an appropriation of an asset that rightfully belongs to the corporation. And to the extent operational disadvantage is a result of the threatened or consummated termination of Edgecumbe, G & N is injured. But it is equally valid to view Boehm as the injured party by reason of having been reduced from a plurality to a minority. *See infra* Part II.C.1.

Some courts allow a direct action only if the shareholder's injury is distinct from the injuries sustained by other shareholders and the corporation. Welch at 162. This is also problematic because some injuries may run to all shareholders-for example, refusal to convene an annual meeting-and be caused by a breach of the duty owed to every shareholder.

Still other courts take a categorical approach to distinguishing between direct and derivative lawsuits and look to past judicial decisions to label a claim as either direct or derivative depending on what previous courts have done in awarding the requested relief. *Id.* at 157–59; *accord* Tim Oliver Brandi, *The Strike Suit: A Common Problem of the Derivative Suit and .the Shareholder Class Action,* 98 Dick. L.Rev. 355, 359 (1994). There are two drawbacks to this approach. First, earlier courts may have incorrectly classified a particular type of action. Second, shareholders may have different rights depending on the specific terms of the articles, bylaws, and agreements of the corporation.

We believe that the correct approach draws the distinction based on the rights the shareholder asserts. Under this view, a direct action may be brought when:

it is based upon a primary or personal right belonging to the plaintiff-stockholder. . . . It is derivative when the action is based upon a primary right of the corporation but which is asserted on its behalf by the stockholder because of the corporation's failure, deliberate or otherwise, to act upon the primary right. *Schreiber v. Butte Copper & Zinc Co.*, 98 F.Supp. 106, 112 (S.D.N.Y.1951). The rights of a shareholder may be derived from the articles of incorporation and bylaws, state corporate law, or agreements among the shareholders or between the corporation and its shareholders. Welch at 160. If none of these establishes a right in the shareholders to the requested relief, the claim, if it exists at all, must be brought on behalf of the corporation in a derivative action. (emphasis supplied)

 The record applicable to this determination establishes that most of the claims sought to be advanced by Abraham involve damage to the corporation, as opposed to damage to his individual rights as a shareholder. Thus, with respect to any claim for damage to the corporation, the issue becomes whether those claims may be asserted by Abraham in his individual capacity under the *Barth* criteria, or whether those claims must be asserted derivatively. At the threshold of this issue is the question of whether federal, or state, law applies to determine whether an individual may assert derivative claims. Without citing to them, the Court acknowledges that there are several cases decided by the United States Court of Appeals for the Seventh Circuit which appear to categorically hold that there is no such animal as a

suit by an individual to enforce derivative claims, and that all corporate claims must be enforced pursuant to Rule 23.1. However, those cases were not decided in the context of recent developments in corporate law, by which many states have evolved a rule such as that in *Barth, supra*. Additionally, there was no analysis in those cases of the substantive rights implicated under the Erie Doctrine with respect to the blanket statement made in those cases. Technically, the Erie Doctrine applies only in diversity cases, and one might contend that because the actions in this adversary proceeding arise exclusively under federal law, the Erie Doctrine does not apply at all. The Court does not deem that to be a good argument in the context of this case. As stated, the foundational requirement of an action under 11 U.S.C. § 523(a)(2), (4) and (6) is whether a claim exists which may then be subjected to the nondischargeability analysis required by those federal provisions. When a claim is based on the alleged violation of duty owed to a corporation by a shareholder, officer or director, the proper party in interest to assert that claim can only be determined by application of the law of the state by which the relationships among the pertinent parties is established. Thus, whether or not Abraham may individually assert derivative claims of ARMS is determined by state law, in this case indisputably the law of Indiana. Although determined in the context of a diversity case, the Court deems the following statement in *Labovitz v. The Washington Times Corporation*, 900 F.Supp. 500, 503 (D.D.C.1995) to be apposite:

Whether suit may be brought by individuals or should be brought by the corporation depends on "considerations and conventions of corporate law," *Whelan v. Abell*, 953 F.2d [663]at 672 [(D.C.Cir. 1992)], and it is state law that determines "whether a shareholder may

maintain a direct, nonderivative action." 12B William M. Fletcher, *Fletcher Cyclopedia of the Law of Private Corporations* § 5911 at 484 (perm. ed. rev.vol. 1993).

*See also, Labovitz v. Washington Times Corporation,* 172 F.3d 897 (D.C.Cir.1999).

■ Putting all of the foregoing together, the determination of whether or not Abraham may individually pursue derivative claims of ARMS is a question of state law in this proceeding. Under state law, due to the existence of creditors of ARMS whose interests will not be provided for by Abraham's direct action on derivative claims, to the extent Abraham seeks to individually assert ARMS' claims, he can do so only by means of a derivative action under Rule 23.1. *Contrast, W & W Equipment Co., Inc. v. Mink,* Ind.App., 568 N.E.2d 564 (1991) [only individual shareholder harm was implicated, and there was no evidence of any creditor in need of protection]. Thus, if Abraham were required to rely upon the rationale of an individual shareholder action asserting a corporate derivative claim, he would not be able to do so in this adversary proceeding.

■ Next, we come to Arcella–Coffman's contention that Abraham failed to comply with the remedy provided by I.C. 23–1–32–4. The critical provision of this statute is in its opening sentence, which states:

(a) Unless prohibited by the articles of incorporation, the board of directors **may** establish a committee consisting of three (3) or more disinterested directors or other disinterested persons to determine ... (emphasis supplied)

The very language of the statute establishes that its procedures are voluntary, and that implementing them is not a precondition to otherwise properly asserting a cause of action. A critical factor in utilizing the foregoing procedure is whether or not "the corporation has a disinterested board that should be permitted to consider the lawsuit's impact on the corporation", *Barth v. Barth,* 659 N.E.2d 559, 562 (1995). In the instant case, there was no independent board of directors on the issues presented to the Court in this matter, and thus I.C. 23–1–32–4 is not a consideration with respect to Abraham's ability to assert derivative claims in his individual capacity as a shareholder.

Finally, even assuming *in arguendo* that Abraham is required to proceed in a derivative action pursuant to Fed.R.Bankr.P. 7023.1/Fed.R.Civ.P. 23.1, that determination would not be much of a hurdle to overcome in this case. Fed.R.Civ.P. 23.1 requires that in order to assert a derivative action by a shareholder/shareholders, the following conditions must be satisfied:

1. The complaint must be verified;

2. The complaint must allege that the plaintiff was a shareholder at the time of the transaction of which the plaintiff complains;

3. The complaint must allege that the action is not a collusive one to confer jurisdiction on a court of the United States which it would not otherwise have;

4. The complaint must allege with particularity the efforts, if any, made by the plaintiff to obtain the action plaintiff desires from the directors—and if necessary from the shareholders—of the corporation, and the reasons for the plaintiff's failure to obtain the action or for not making the effort.

In order to pursue a Rule 23.1 action in this case, very little would be required of Abraham. Because the original complaint was not verified, it would be necessary for him to do so by means of an amended complaint. It is undisputed that Abraham was a shareholder of ARMS at the time of

the transactions of which he complains. There is no question in this case that this adversary proceeding is not a collusive action to confer jurisdiction on the United States Bankruptcy Court, in that *only* the United States Bankruptcy Court has jurisdiction to determine claims under 11 U.S.C. § 523(a)(2), (4) and (6). If action by the Board of Directors was necessary to authorize the filing of this adversary complaint on behalf of ARMS—which the Court has determined it was not—given the 50/50 deadlock among shareholders and directors of ARMS, it would have been a nugatory effort indeed for Abraham to have sought formal authorization from the Board of Directors to have ARMS file this adversary proceeding against Arcella–Coffman.

As stated above, the affirmative defenses asserted by Arcella–Coffman do not relate to "standing"; rather, they relate to the prosecution of this action by the real parties-in-interest, thereby implicating Fed.R.Bankr.P. 7017/Fed.R.Civ.P. 17(a). Even if the Court were to determine that the action asserting ARMS' claims must be initiated as a Rule 23.1 action, the Court would be required to provide a reasonable time for substitution of the real party-in-interest with respect to Rule 23.1—that real party in interest being not ARMS, but rather Abraham for the benefit of ARMS. The requirements of Rule 23.1 can be easily satisfied by Abraham in this case by means of an amended complaint. The Court could entirely hedge its determination of the validity of the authorization of initiation of this adversary proceeding by Abraham as President of the corporation—by simply providing Abraham with an opportunity to amend his complaint to state a derivative action under Rule 23.1. The Court is not going to do so, being confident of its pronouncement that Abraham as President of ARMS properly authorized the filing of this adversary proceeding by ARMS.

Based upon the foregoing, the Court determines that ARMS was validly authorized by Abraham, as its President, to assert the claims advanced against Arcella–Coffman as to injuries alleged to have been suffered by ARMS as a result of the alleged actions of Arcella–Coffman.

B. *The Remaining Issue is That Stated in Affirmative Defense H2 in Arcella–Coffman's Answer, i.e., Whether Abraham is a Proper Party in Interest to Assert Nondischargeability Claims in His Own Right as a Shareholder Against Arcella–Coffman*

As stated above, the procedure employed by the parties and the Court appears to be somewhat unique in the context of the issues raised by Arcella–Coffman. Ordinarily, whether or not an individual may assert claims in the context of this case is determined only after a trial, and thus only after a full evidentiary record has been developed as to the nature of the claims asserted and the evidentiary foundation for those claims. Based upon the complaint and upon the record designated above with respect to this order, it appears at first blush that most of the claims asserted by Abraham directly relate to "derivative" claims in relation to ARMS, rather than to direct harm suffered by Abraham with respect to his rights as a shareholder, officer or director of the corporation. However, as stated in *In re Phillips*, 185 B.R. 121, 128 (Bankr. E.D.N.Y.1995):

Furthermore, every creditor has standing to challenge a debtor's discharge and seek a determination that a debt is not dischargeable. *In re Graziano*, 35 B.R. 589, 593 ([Bankr.]E.D.N.Y.1983). The

term "creditor" includes those entities claiming a right to payment on a debt that arose pre-petition, even if such debt is disputed. *Johnson v. Home State Bank,* 501 U.S. 78, 111 S.Ct. 2150, 115 L.Ed.2d 66 (1991). Here, the Plaintiff as both an individual and a shareholder of Advertising Plus is an entity claiming a right to payment on pre-petition unliquidated debts.

Given the paucity of the evidentiary record, the Court is unable to determine the extent to which claims asserted by Abraham in his individual capacity may be sustained in that context against Arcella–Coffman. This is particularly so in light of the evidence before the Court at this juncture that Abraham has personally paid corporate debts, at least alleged at this point to have arisen from conduct of Arcella–Coffman, which may give rise to some form of subrogation claim on his part; *see, In re Pomainville,* 254 B.R. 699, 705–706 [headnote 17–18] (Bankr.S.D.Ohio 2000).

The Court thus determines that whether or not Abraham has asserted sustainable claims on his own behalf, as contrasted to corporate or "derivative" corporate claims, will be determined upon the record established at the trial of this case.

IV. *Decision*

Based upon the analysis stated above, the Court determines that ARMS, as a corporate entity, is the proper party-in-interest to assert the claims asserted in Counts I and II of the plaintiffs' complaint, and that the affirmative defenses raised by the defendant Arcella–Coffman to the assertion of those claims by ARMS should be overruled. The Court further determines that whether or not claims asserted in Count III of the complaint may be asserted by the plaintiff Abraham in his individual capacity will be determined following trial of this adversary proceeding.

IT IS ORDERED that Automated Reporting Management Systems, Inc. is the real party-in-interest with respect to Counts I and II of the complaint filed in this adversary proceeding, and that the claims asserted in those counts were validly authorized to be pursued by the corporation in its own behalf.

IT IS FURTHER ORDERED that the determination of whether or not claims asserted in Count III of the complaint filed in this adversary proceeding may be pursued individually by the plaintiff Robert Abraham will be determined upon the record established by trial of this adversary proceeding.