**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEYS FOR APPELLANT:
**RICHARD C. HERSBERGER**
**JUDY G. HESTER**
Indianapolis, IN

ATTORNEYS FOR APPELLEE:
**JEFFREY C. MCDERMOTT**
Carmel, IN

**LIBBY Y. GOODKNIGHT**
**BRYAN S. STRAWBRIDGE**
Indianapolis, IN

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| DESIGNPLAN, INC. and JILL D. WILLEY, | ) | |
| | ) | |
| Appellant-Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 29A05-1203-PL-120 |
| | ) | |
| JOHN R. PRICE and THE NATIONAL BANK | ) | |
| OF INDIANAPOLIS CORPORATION, | ) | |
| | ) | |
| Appellee-Defendant. | ) | |

APPEAL FROM THE HAMILTON SUPERIOR COURT
The Honorable William J. Hughes, Judge
The Honorable William P. Greenaway, Magistrate Judge
Cause No. 29D03-1012-PL-1609

**January 15, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**PYLE, Judge**

Designplan, Inc. ("Designplan") and Jill D. Willey ("Willey") as Trustee of the Jill D. Willey Revocable Stewardship Trust ("Willey Trust") (collectively "Appellants")[1] appeal the trial court's order granting summary judgment to National Bank of Indianapolis ("NBI") as Trustee of the Richard Webster Trust ("Webster Trust").[2]

We affirm.

ISSUE

Whether the trial court erred by granting summary judgment to NBI on Appellants' claims of breach of fiduciary duty and unlawful corporate distribution.

FACTS

Designplan was an Indiana corporation that provided architectural and design services. Designplan was owned by Richard Webster ("Webster"), who had 525 shares ("the Webster Shares"); Willey, who had 375 shares; and three other individuals, two of whom each had 50 shares and one of whom had 40 shares. Webster and Willey were directors of Designplan and operated the business. The parties agree that Designplan was a close corporation.[3]

---

[1] Willey filed, pursuant to Indiana Appellate Rule 46(G), a notice of joinder in Designplan's Appellant's Brief, and this Court accepted her notice.

[2] John R. Price, who is a party of record in the case below, has not actively participated in this appeal but, pursuant to Indiana Appellate Rule 17(A), is a party to this appeal.

[3] Our Supreme Court had explained that a "close corporation [is] one that typically has relatively few shareholders and whose shares are not generally traded in the securities market." *Melrose v. Capitol City Motor Lodge, Inc.*, 705 N.E.2d 985, 900 (Ind. 1998) (citing *Barth v. Barth*, 659 N.E.2d 559, 561 n. 5 (Ind. 1995)).

On January 17, 2002, Webster, Willey, and Designplan entered into a Buy-Sell

Agreement in regard to Designplan's purchase of Webster's and Willey's shares upon his

or her death.[4]  Specifically, the Buy-Sell Agreement provided that:

> Purpose of Agreement – The purpose of this Agreement is to provide for continuity in the management and policies of [Designplan] by providing for the purchase of any deceased Shareholder's shares by [Designplan].
>
> * * * * *
>
> 4.  Purchase and Sale of Shares of Deceased Shareholder.  Upon the death of any listed Shareholder, [Designplan] *shall* purchase, and the estate of the deceased Shareholder *shall* sell to [Designplan], all of the shares of [Designplan] owned by the deceased Shareholder at the time of death, for the price and upon the terms and conditions specified in this Agreement.
>
> 5.  Determination of Purchase Price.   Upon the death of a Shareholder the purchase price shall be the greater of the following two amounts:  (a) the value of his/her stock as established in accordance with Paragraph 6 of this Agreement; or (b) an amount equal to the total proceeds of the policies on his/her life which are subject to this Agreement.  The term "proceeds" shall include the face value of the policy, any addition, dividends, or accumulations paid with the claim, less any loans and unpaid interest outstanding against the policy.
>
> 6. Determination of Value of Shares.   The price of the capital stock of each Shareholder to be sold pursuant to this Agreement shall be the fair market value of the shares as determined by two independent appraisers on the last day of the month immediately preceding such date of death.
>
> 7. Purpose and Provisions of Insurance.     In order to assure that all or a substantial part of the purchase price for the shares of a deceased [S]hareholder will be available immediately in cash upon his death,

---

[4] Our Indiana Supreme Court has noted that "[m]any closely-held corporations enter into buy and sell agreements with their principal shareholders" and that "[g]enerally, under such an agreement, the corporation is obligated to purchase the stock held by a shareholder in the event of his or her death." *Melrose*, 705 N.E.2d at 987 n.2.  The Indiana Supreme Court further explained that "[p]urchasing life insurance policies on the lives of shareholders is one method for the corporation to fund such a purchase" and that when the "shareholder dies, the insurance proceeds received by the corporation are used to purchase the deceased shareholder's stock in the corporation."  Id. (citing 1 F. Hodge O'Neal & Robert B. Thompson, *O'Neal's Close Corporations*, § 7.46 (3d ed. 1991)).

3

[Designplan] has procured and made subject to this Agreement insurance on the lives of the said Shareholders as follows:

(a) Richard M. Webster is insured under Policy No. L4022075, issued by Prudential Financial in the face amount of $1,565,000 and [Designplan] is the applicant, owner, and beneficiary thereof.

(b) Jill Willey is insured under Policy No. 1A23974650, issued by Pacific Life Insurance Company in the face amount of $1,158,137 and [Designplan] is the applicant, owner, and beneficiary thereof.

8. <u>Beneficiary and Owner of Policies.</u>   [Designplan] shall be the beneficiary and sole owner of all policies issued to it subject to this Agreement.  So long as this Agreement is in effect, [Designplan] agrees that it will maintain such insurance in full force and effect and pay all premiums falling due on all policies issued to it subject to this Agreement.

\* \* \* \* \*

12. <u>Payment of Purchase Price.</u>    The purchase price payable to the estate of the deceased Shareholder shall be paid in cash, or in cash and notes, to the estate of the deceased Shareholder upon:

(a) The estate of the deceased Shareholder becoming capable in the opinion of the legal counsel for [Designplan] of transferring to [Designplan] full legal and equitable tax-free title to the shares of the deceased Shareholder; and

(b) Delivery to the Secretary of [Designplan] of the certificates representing the shares of the deceased Shareholder properly endorsed in the manner required to transfer full legal and equitable tax-free title of those shares to [Designplan].

\* \* \* \* \*

19. <u>Binding on Heirs.</u> This Agreement shall be binding upon [Designplan] and the Shareholders, and their respective heirs, legal representatives, executors, administrators, successors and assigns; provided, however, that nothing herein shall be construed as an authorization or right of any party to assign his rights or obligations hereunder.  Any rights given or duties imposed upon the estate of a deceased Shareholder shall inure to the benefit of and be binding upon the legal representative of such decedent's estate in his fiduciary capacity.  If any of the Shareholders is a

trustee of, or transfers his shares into a revocable living trust, the distributees of such trust or trusts, their respective heirs, legal representatives, executors, administrators, successors, and assigns shall be bound by the terms of this Agreement.

(App. 26-29)[5] (emphasis added). The Buy-Sell Agreement was signed by Webster and Willey as shareholders. In addition, Willey also signed the Buy-Sell Agreement as President of Designplan.

More than six years later, on October 13, 2008, Webster, Willey, and Designplan executed an amendment to the Buy-Sell Agreement ("Amendment") to change the purchase price of the shares to the greater of: "a.) the proceeds from the insurance policy on the life of the deceased corporate officer at the date of death; or b.) the book value of the shares as determined on the last day of the month immediately preceding such date of death." (App. 30). The Amendment was signed by Webster and Willey as shareholders; Willey also signed as President of Designplan.

On October 17, 2008, Webster underwent open-heart surgery. On October 20, 2008, Webster transferred all the Webster Shares in Designplan to the Webster Trust, of which NBI was the trustee.[6] That same day, Willey also transferred all of her shares to the Willey Trust. The following day, on October 21, 2008, Webster died.

---

[5] Both Appellants and NBI submitted an appellate appendix. We will refer to Appellants' Appendix as (App.) and to NBI's Appendix as (Appellee's App.). Because Appellants' Appendix did not include all documents relating to the motion for summary judgment, we direct Appellants' attention to Indiana Appellate Rule 50(A)(2)(f), which provides that an Appellant's Appendix "shall contain" the "pleadings and other documents from the Clerk's Record in chronological order that are necessary for resolution of the issues raised on appeal[.]" *See also Kelly v. Levandoski*, 825 N.E.2d 850, 856 (Ind. Ct. App. 2005) (explaining that, under Appellate Rule 50(A), an appellant's appendix should include "'all documents relating to the disposition of the motion for summary judgment, including any documents that [appellee] designated and filed with the trial court'") (quoting *Yoquelet v. Marshall County*, 811 N.E.2d 826, 830 (Ind. Ct. App. 2004)), *trans. denied*.

Following Webster's death, Designplan collected the benefits of the $1,565,000 life insurance policy that it had on Webster. Thereafter, on December 11, 2008, Designplan wrote a check for $1,546,072.08 to NBI in exchange for the Webster Shares.[7] Later, in early 2009, Designplan was dissolved.

In December 2010, Designplan and Willey, as Trustee of the Willey Trust, filed a complaint against Designplan's former attorney, John R. Price, and against NBI, as Trustee for the Webster Trust. In the complaint, Designplan and Willey alleged that Price was "negligent" for "failing to properly advise and inform Willey and Designplan with respect to the redemption of Webster's Shares." (Appellee's App. 6). They also appeared to allege a claim of legal malpractice against Price in relation to his representation of Designplan in a lawsuit, filed in 2007, in which Designplan was sued by another company for money owed on a consulting contract.[8] They did not make a specific claim against NBI in the complaint, but they alleged that the Webster Trust and Webster's wife held "the bounty of the illegal redemption of the Webster Shares" and asserted that "equity demand[ed] that this money be returned in full to Designplan to be used to pay Designplan's creditors," including the parties from the consulting contract lawsuit, who sought to reduce an arbitration award against them. (Appellee's App. 8).

---

[6] The Webster Trust was created by Webster in November 2003.

[7] The Designplan check was apparently written by Jill Speraw, who was the individual who owned 40 shares of Designplan.

[8] This 2007 lawsuit went to arbitration in 2010 and resulted in an arbitration award against Designplan for $631,500.

In May 2011, NBI filed a motion for summary judgment. In June 2011, Appellants moved to amend their complaint and to strike NBI's motion for summary judgment, and the trial court granted both motions. In Appellants' amended complaint, they alleged three counts: (1) a negligence claim against Price;[9] (2) a claim of unlawful corporate distribution against NBI; and (3) a claim that NBI had breached its fiduciary duty to Designplan and Willey. Specifically, in regard to the unlawful corporate distribution claim against NBI, Appellants—basing their claim under Indiana Business Corporation Law—alleged that the Webster Trust had "received an improper distribution from Designplan in violation of Indiana law, specifically IC [§] 23-1-28-3, when it exchanged its Webster Shares of Designplan pursuant to the Buy-Sell Agreement" and that "[p]ursuant to I.C. [§] 23-1-35-4, the Webster Trust [was] liable to Plaintiffs in the amount of the distribution that the Webster Trust [had] received from Designplan." (App. 22, 23). As for the fiduciary duty claim, Appellants alleged that NBI had breached its fiduciary duty "when it redeemed the Webster Shares in exchange for the life insurance proceeds thereby leaving Designplan insolvent and unable to pay debts that existed prior to the redemption of the Webster Shares." (App. 22).

In September 2011, NBI filed a second motion for summary judgment, arguing that it was entitled to judgment as a matter of law on both claims. Concerning the unlawful corporate distribution claim, NBI asserted that it was entitled to summary judgment because the redemption of shares was a contractual commitment under the Buy-Sell Agreement and did not constitute a "distribution" under the Indiana Business

_____

[9] Appellants alleged that Price was negligent in his representation of Designplan with respect to both the redemption of the Webster shares and the consulting contract lawsuit.

7

Corporation Law statutes.  NBI also argued that it was entitled to summary judgment on the breach of fiduciary duty claim because it had acted in compliance with the terms of the Buy-Sell Agreement when it accepted the life insurance proceeds in exchange for Designplan's redemption of the Webster Shares.

In Appellants' response to NBI's motion for summary judgment, they alleged that NBI's acceptance of the insurance proceeds for its shares of Designplan stock was a breach of NBI's duty not to cause harm to Designplan and its shareholders.  It argued that NBI's compliance with the Buy-Sell Agreement was irrelevant because, at the time of the redemption, the agreement required an unlawful corporate distribution and that NBI had a "fiduciary obligation" to not cause Designplan and its directors to "unwittingly violate I.C. § 23-1-28-3, and become liable for the amount of the redemption."  (Appellee's App. 111).  Appellants asserted that Designplan had made an unlawful corporate distribution, at the direction of attorney Price, when it redeemed Webster's shares from NBI, but they argued that Willey, as the remaining director of Designplan, was statutorily entitled to "contribution" from NBI for the unlawful distribution under Ind. Code § 23-1-35-4(b).

In NBI's reply, it argued that Willey was not entitled to contribution from NBI under Ind. Code § 23-1-35-4(b) because she had not been held liable for the alleged unlawful distribution.

On December 20, 2011, a summary judgment hearing was held before the trial court's magistrate.  Thereafter, the trial court issued an order granting NBI's motion for

8

summary judgment and entering final judgment under Indiana Trial Rule 54(B).[10] Appellants filed a motion to correct error and a motion for a hearing before the elected judge. Despite denying the latter motion, the trial court judge held a hearing on Appellants' motion to correct error and then denied the motion. Appellants now appeal.

### DECISION

Appellants argue that the trial court erred by granting NBI's motion for summary judgment. Specifically, Appellants argues that the trial court erred by granting summary judgment to NBI on Appellants' claims of breach of fiduciary duty and unlawful corporate distribution.

When reviewing a trial court's order granting summary judgment, we apply the same standard as that used in the trial court. *Kopczynski v. Barger*, 887 N.E.2d 928, 930 (Ind. 2008). Summary judgment is appropriate only where the designated evidence shows "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Ind. Trial Rule 56(C). "A fact is 'material' if its resolution would affect the outcome of the case, and an issue is 'genuine' if a trier of fact is required to resolve the parties' differing accounts of the truth . . . , or if the undisputed facts support conflicting reasonable inferences." *Williams v. Tharp*, 914 N.E.2d 756, 761 (Ind. 2009) (internal citations omitted). When the defendant is the moving party, the defendant must show that the undisputed facts negate at least one element of the plaintiff's cause of action or that the defendant has a factually unchallenged affirmative

---

[10] Appellants' claims against attorney Price remain.

9

defense that bars the plaintiff's claim. *Dible v. City of Lafayette*, 713 N.E.2d 269, 272 (Ind. 1999).

A trial court's grant of summary judgment is "'clothed with a presumption of validity,'" and an appellant has the burden of demonstrating that the grant of summary judgment was erroneous. *Williams*, 914 N.E.2d at 762 (quoting *Rosi v. Bus. Furniture Corp.*, 615 N.E.2d 431, 434 (Ind. 1993)). In reviewing a trial court's ruling on a motion for summary judgment, we may affirm on any grounds supported by the designated evidence. *SMDfund, Inc. v. Fort Wayne-Allen Cnty. Airport Authority*, 831 N.E.2d 725, 728 (Ind. 2005), *cert. denied*.

NBI's act of receiving the life insurance proceeds in exchange for the Webster Shares, which was done pursuant to the Buy-Sell Agreement, is the basis for Appellants' claims against NBI.[11] Designplan and Willey—who signed the Buy-Sell Agreement and complied with the Agreement's terms when Designplan collected the life insurance proceeds and exchanged those proceeds for the Webster shares—argue that NBI caused Designplan to engage in an unlawful corporate distribution and breached a fiduciary duty when NBI complied with the same terms of the Buy-Sell Agreement.

A. Unlawful Corporate Distribution

Appellants argue that the trial court erred by granting summary judgment to NBI on Appellants' claim for unlawful corporate distribution.

---

[11] This exchange of life insurance proceeds for the Webster Shares also makes up part of Appellants' negligence claim against attorney Price. Our decision in this case relates only to NBI, and we make no statement or determination as to Appellants' claims against other defendants.

Appellants' claim of unlawful corporate distribution against NBI was brought under the Indiana Business Corporation Law (BCL). "The Indiana General Assembly passed the [BCL] in 1986 based on the recommendations of the Indiana General Corporation Law Study Commission." *In re ITT Derivative Litig.*, 932 N.E.2d 664, 667 (Ind. 2010) (citing 1986 Ind. Acts 1377–1532)). While the BCL is modeled after the 1984 version of the Revised Model Business Corporation Act (RMA), it is not an exact copy of the RMA. *Id.* The BCL "applies to all domestic corporations closely held and public corporations alike[,]" and it "sets forth corporate director duties, responsibilities, and standard[s] of conduct expected of corporate directors." *Melrose v. Capitol City Motor Lodge, Inc.*, 705 N.E.2d 985, 988 (Ind. 1998) (citing Ind. Code §§ 23–1–17–3, 23–1–35–1 to 23–1–35–4).

Appellants assert that Designplan's payment of the life insurance proceeds in exchange for the Webster Shares was a "distribution" prohibited under Indiana Code § 23-1-28-3, which provides:

A distribution may not be made if, after giving it effect:

(1) the corporation would not be able to pay its debts as they become due in the usual course of business; or

(2) the corporation's total assets would be less than the sum of its total liabilities plus (unless the articles of incorporation permit otherwise) the amount that would be needed, if the corporation were to be dissolved at the time of the distribution, to satisfy the preferential rights upon dissolution of shareholders whose preferential rights are superior to those receiving the distribution.

Ind. Code § 23-1-28-3. A distribution is defined under the BCL as follows:

(a) "Distribution" means a direct or indirect transfer of money or other property (except a corporation's own shares) or incurrence or transfer of indebtedness by a corporation to or for the benefit of its shareholders in respect of any of its shares under IC 23-1-28. A distribution may be in the form of a declaration or payment of a dividend; a purchase, redemption, or other acquisition of shares; a distribution of indebtedness; or otherwise.

(b) The term does not include:

> (1) amounts constituting reasonable compensation for past or present services or reasonable payments made in the ordinary course of business under a bona fide retirement plan or other benefit program; or
> (2) the making of or payment or performance upon a bona fide guaranty or similar arrangement by a corporation to or for the benefit of its shareholders.

However, the failure of an amount to satisfy subdivision (1), or of a payment or performance to satisfy subdivision (2), is not determinative of whether the amount, payment, or performance is a distribution.

Ind. Code § 23-1-20-7. The BCL sets forth the potential for a director's liability for an

unlawful corporate distribution as follows:

(a) *Subject to section 1(e) of this chapter*,[12] *a director* who votes for or assents to a distribution made in violation of this article or the articles of incorporation *is personally liable* to the corporation for the amount of the

---

[12] Section 1(e) "provides that a director 'is not liable' for an act or omission unless '[t]he breach or failure to perform constitutes willful misconduct or recklessness.'" *Galligan v. Galligan*, 741 N.E.2d 1217, 1226 (Ind. 2001) (quoting Ind. Code § 23-1-35-1(e)). When discussing Indiana Code § 23-1-35-1, our Indiana Supreme Court explained that "Indiana has statutorily implemented a strongly pro-management version of the business judgment rule" and that this "rule includes 'a presumption that in making a business decision, the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company.'" *G & N Aircraft, Inc. v. Boehm*, 743 N.E.2d 227, 238 (Ind. 2001) (quoting *Aronson v. Lewis*, 473 A.2d 805, 812 (Del. 1984), *overruled on other grounds by Brehm v. Eisner*, 746 A.2d 244 (Del. 2000)). This presumption can only be overcome by showing that a director engaged in recklessness or willful misconduct. *Id.* Indeed, "[s]ubsection (e) [of Indiana Code § 23-1-35-1] reflects the public policy of Indiana that personal liability should be imposed on directors only in limited circumstances and should be construed in furtherance of that objective." *See* Ind. Code § 23-1-35-1(e) cmt. *See also* Ind. Code § 23-1-17-5 (providing that official comments to the BCL may be published and "may be consulted by the courts to determine the underlying reasons, purposes, and policies of [the BCL] and may be used as a guide in its construction and application").

distribution that exceeds what could have been distributed without violating this article or the articles of incorporation.

(b) *A director held liable* for an unlawful distribution under subsection (a) is entitled to contribution:

> (1) from every other director who voted for or assented to the distribution, subject to section 1(e) of this chapter; and

> (2) from each shareholder for the amount the shareholder accepted.

Ind. Code § 23-1-35-4 (emphasis added).

In arguing that the trial court erred by granting summary judgment to NBI on their unlawful corporate distribution claim, Appellants ask that we determine, as a matter of law, that: (1) Designplan's payment to NBI pursuant to the Buy-Sell Agreement was a "distribution" under Indiana Code § 23-1-20-7; (2) this payment constituted an unlawful corporate distribution under Indiana Code § 23-1-28-3;[13] and (3) NBI's "wrongful acceptance" of the life insurance proceeds would make it liable for contribution to Designplan and Willey under Indiana Code § 23-1-35-4. Appellants' Br. at 16.

However, we need not make any determinations regarding whether there has been a violation of the BCL. It is undisputed that there has been no claim or complaint against Willey or Designplan that they violated the BCL or made an unlawful corporate distribution that Willey would be personally liable. It seems that the BCL, which serves as a shield to protect directors such as Willey from liability, should not now be used as a sword against NBI seeking contribution for a liability against Willey that has not even

---

[13] By asserting that the payment was an unlawful corporate distribution, Appellants are implicitly making an admission that they violated the BCL—or that their act of paying the insurance proceeds was reckless or constituted willful misconduct—and that Willey is personally liable for the unlawful corporate distribution pursuant to Indiana Code § 23-1-35-4.

been established. *See In re ITT Derivative Litig.*, 932 N.E.2d at 669 ("explaining that the liability standard of subsection (e) responded to increasing amount of litigation against directors, the increasing expense of defending such claims, and the increasing cost of director and officer liability insurance") (citing Ind. Code § 23-1-35-1(e) cmt.)). Thus, we cannot say that the trial court erred by granting summary judgment to NBI on Appellants' claim of unlawful corporate distribution.[14]

B. Breach of Fiduciary Duty

Appellants also argue that the trial court erred by granting summary judgment to NBI on Appellants' claim for breach of fiduciary duty.

A claim for breach of fiduciary duty requires proof of three elements: (1) the existence of a fiduciary relationship; (2) a breach of the duty owed by the fiduciary to the beneficiary; and (3) harm to the beneficiary. *Farmer's Elevator Co. of Oakville, Inc. v. Hamilton*, 926 N.E.2d 68, 79 (Ind. Ct. App. 2010), *trans. denied*. A defendant is entitled to summary judgment as a matter of law when the undisputed material facts negate at least one element of the plaintiff's claim. *Rhodes v. Wright*, 805 N.E.2d 382, 387 (Ind. 2004).

Here, Appellants alleged in their complaint that NBI, as trustee of the Webster Trust, owed a fiduciary duty to Appellants and that NBI breached that duty when it,

---

[14] Appellants, acknowledging that Willey has not been held liable as a director for a claim of unlawful corporate distribution under which she could seek contribution under the BCL statutes, argue that Designplan, as a corporate entity, should be able to recover the life insurance proceeds from NBI under some sort of fraud on the corporation claim. Appellants neither asserted a fraud claim against NBI in its complaint nor raised such an argument on summary judgment. Thus, we need not address the argument. *See McGill v. Ling*, 801 N.E.2d 678, 687 (Ind. Ct. App. 2004) ("Generally, a party may not raise an issue on appeal that was not raised to the trial court, even in summary judgment proceedings."), *trans. denied.*

pursuant to the Buy-Sell Agreement, exchanged the Webster Shares for Designplan's payment of the life insurance proceeds. On appeal, the parties characterize NBI as a shareholder and agree that it owed a fiduciary duty to Willey and Designplan. Thus, they do not challenge the existence of duty and, instead, direct their arguments to whether NBI breached its duty to Appellants. We will do the same.

"Shareholders of close corporations owe fiduciary duties substantially different from the duties owed by their counterparts in publicly traded corporations." *McLinden v. Coco*, 765 N.E.2d 606, 615 (Ind. Ct. App. 2002) (citing *Melrose*, 705 N.E.2d at 900). "Indiana courts have characterized closely-held corporations as 'incorporated partnerships' and as such have imposed a fiduciary duty upon shareholding 'partners' to deal fairly not only with the corporation but with fellow shareholders as well." *Melrose*, 705 N.E.2d at 991. Thus, "'shareholders in a close corporation stand in a fiduciary relationship to each other, and as such, must deal fairly, honestly, and openly with the corporation and with their fellow shareholders.'" *Id.* (quoting *Barth v. Barth*, 659 N.E.2d 559, 561 (Ind. 1995)). "The standard imposed by a fiduciary duty is the same whether it arises from the capacity of a director, officer, or shareholder in a close corporation." *G & N Aircraft, Inc. v. Boehm*, 743 N.E.2d 227, 240 (Ind. 2001). Whether a particular act or omission is a breach of duty is generally a question of fact for the jury, but can be a question of law where the facts are undisputed and only a single inference can be drawn from those facts. *Northern Ind. Pub. Serv. Co. v. Sharp*, 790 N.E.2d 462, 466 (Ind. 2003).

The undisputed facts reveal that Designplan, Willey, and Webster entered into a Buy-Sell Agreement, in which Designplan agreed to secure life insurance on Webster and Willey and to use those proceeds to purchase Webster's and Willey's shares in Designplan upon his or her death. Under the Buy-Sell Agreement, Webster and Willey agreed to sell all of their shares to Designplan and agreed that the agreement would be binding on their heirs. Prior to Webster's death, he transferred his Webster Shares into his Webster Trust, for which NBI was trustee. After Webster's death, Designplan collected the life insurance proceeds and paid those proceeds to NBI in exchange for the Webster Shares. It is undisputed that this was all done pursuant to the Buy-Sell Agreement.

Appellants now contend that NBI breached a fiduciary duty owed to them because Designplan's payment of the insurance proceeds in exchange for the Webster Shares left Designplan unable to cover its debts. NBI argues that Appellants "cannot affirmatively invite the conduct of which they now complain and then argue that there was no corporate authorization for the redemption of the Webster Shares or that NBI failed to act openly, honestly, and fairly with [Appellants]." NBI's Br. at 11. We agree.

Appellants' argument that NBI breached a fiduciary duty because it (1) did not inquire into whether Designplan had enough money to cover its debts before it complied with the Buy-Sell Agreement; and (2) accepted Designplan's payment of the life insurance proceeds in exchange for the Webster Shares, is without merit. Designplan collected the life insurance proceeds and paid them to NBI to purchase the Webster

16

Shares. It cannot now claim NBI breached its fiduciary duty for Designplan's own actions.

Based on the undisputed designated evidence, we conclude that NBI did not breach its duty to deal fairly, honestly, and openly with Appellants. Because there is no breach of duty, we conclude that the trial court did not err by granting NBI's motion for summary judgment. *See, e.g., Rhodes*, 805 N.E.2d at 385 (holding that a defendant is entitled to judgment as a matter of law when the undisputed material facts negate at least one element of the plaintiff's claim).

Affirmed.

FRIEDLANDER, J., and BROWN, J., concur.